**HAITIAN REFUGEE CENTER, INC., et al., Plaintiffs,**

**v.**

**James BAKER, III, et al., Defendants.**

**No. 91–2653–CIV.**

United States District Court, S.D. Florida.

Dec. 20, 1991.

Ira J. Kurzban, Kurzban, Kurzban, Weinger, PA, Miami, Fla., for plaintiffs.

Dexter Lee, Asst. U.S. Atty., Miami, Fla., for defendants.

### ORDER GRANTING LIMITED PRELIMINARY INJUNCTIVE RELIEF

ATKINS, Senior District Judge.

THIS CAUSE comes before the court on plaintiffs' requests that the court do the following: first, enter supplemental findings of fact and conclusions of law in support of the December 17, 1991 "Temporary Restraining Order" (TRO) presently on appeal before the Eleventh Circuit Court of

Appeals; second, order defendants preliminarily to allow plaintiffs' lawyers access under the first amendment to the interdicted Haitian class members; and third, prohibit defendants preliminarily from forcefully repatriating Haitians in their custody either until the court reaches the merits of the other remaining claims in the Amended Complaint or until defendants implement and follow procedural safeguards adequate to ensure that Haitians with bona fide claims of political persecution are not forcefully returned to Haiti in violation of domestic and international law.

## I. BACKGROUND

The relevant procedural background can be summarized as follows. On December 3, 1991, this court granted plaintiffs' first application for preliminary injunctive relief. The basis of that ruling was the court's finding a substantial likelihood that defendants' actions in carrying out an Executive program providing for the interdiction and repatriation of Haitians on the high seas violated the following two justiciable, judicially enforceable rights: the class members' right of non-refoulement, arising under Article 33 of the 1967 United Nations Protocol Relating to the Status of Refugees; and HRC's right of association and counsel, arising from the first amendment to the United States Constitution. As bases for granting the first application for preliminary injunctive relief, the court also found that plaintiffs had demonstrated a substantial threat of suffering irreparable, even fatal, injury in the absence of an injunction; that this threatened injury outweighed the potential harm an injunction would have caused defendants; and that the injunction would not have been adverse to the public interest. *See* Order Granting Preliminary Injunctive Relief and Supporting Memorandum Opinion (hereafter "Memorandum Opinion") at 55–62.

Based on these findings, the court granted the following injunctive relief:

defendants are hereby enjoined from forcefully repatriating the individual plaintiffs or class members in their custody either until the merits of the underlying action are resolved or until defendants implement and follow procedures, such as those contained in the INS Guidelines, adequate to ensure that Haitians with bona fide political asylum claims are not forced to return to Haiti in violation of Article 33 of the Protocol.

*Id.* at 62. Immediately thereafter, defendants appealed to the Eleventh Circuit Court of Appeals.

In a two-to-one decision issued on December 17, 1991, the Court of Appeals dissolved the injunction and remanded the case back to this court, with instructions to dismiss the claims predicated on Article 33 of the Protocol. The primary basis of the majority's ruling was a determination that "Article 33 is not self-executing and thus provides no enforceable rights to the Haitian plaintiffs in this case." December 17, 1991 Per Curiam Opinion at 3. The majority also concluded that because the injunctive relief provided did not redress HRC's first amendment right of access to the class members, that right alone could not support the relief granted. *Id.* at 4. Having found no substantial likelihood of success on the Article 33 claim—the primary basis of this court's injunction—the Court of Appeals' three-page per curiam opinion did not disturb this court's findings regarding the threat of irreparable harm to plaintiffs, the balance of harms, or disservice to the public interest.[1]

Within hours of the Court of Appeals' dissolution of the preliminary injunction on Tuesday, December 17, plaintiffs filed an Emergency Motion for Issuance of Temporary Restraining Order Based Upon the APA (Emergency Motion for TRO). In essence, the motion requested that, in light of

---

1. In a fifteen-page dissent, Circuit Judge Hatchett concluded that this court properly issued the injunction. *Id.* at 1, 77 S.Ct. 1222 (Hatchett, J., dissenting). Judge Hatchett also disagreed with the majority's refusal to consider whether the APA was an appropriate basis for upholding the injunction, which he apparently thought was the case. *See id.* at 4 (per curiam majority) (stating that "Judge Hatchett, in dissent, would uphold the issuance of the preliminary injunction on the basis of the APA claim").

the thorough briefing in the Court of Appeals, this court reconsider its previous ruling finding no likelihood of success on the APA grounds and enter a TRO. At approximately 10:00 p.m. on Tuesday, December 17, this court orally granted, on the APA grounds pending a hearing set for Friday, December 27, 1991, a TRO maintaining the status quo, i.e., enjoining defendants from repatriating interdicted class members.[2] This court also denied defendants's oral Emergency Motion for Stay of the TRO Pending Appeal. On Wednesday, December 18, defendants filed with the Eleventh Circuit Court of Appeals an appeal of the TRO. Defendants also filed an Emergency Motion for Stay [of the TRO] Pending Appeal Or, In the Alternative, for Summary Reversal or for Writ of Mandamus. At approximately 8:00 p.m. on Thursday, December 19, 1991, the Court of Appeals stayed and suspended pending appeal this court's TRO, deeming the TRO to be an appealable preliminary injunction.

Earlier today—Friday, December 20, 1991—plaintiffs once again asked this court for relief. As noted above, plaintiffs request that this court do the following: first, enter supplemental findings of fact and conclusions of law in support of the December 17, 1991 "TRO" presently on appeal before the Eleventh Circuit Court of Appeals; second, order defendants to allow plaintiffs' lawyers access under the first amendment to the interdicted Haitian class members; and third, prohibit defendants from forcefully repatriating Haitians in their custody either until the court reaches the merits of the remaining claims in the Amended Complaint or until defendants implement and follow adequate screening procedures. We address these requests in return.

## II. SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

A majority of the Eleventh Circuit Court of Appeals has determined that this court's

December 17, 1991 TRO was, in effect, a preliminary injunction. Accordingly, an appeal of that preliminary injunction is before the Court of Appeals, where it is stayed and suspended pending appeal. This court had only several hours to consider the propriety of entering the December 17 preliminary injunction. Due to this fact, and in order to aid appellate review, this court finds it appropriate to describe briefly the basis, both legal and factual, for that ruling.[3]

A necessary basis for the court's ruling was the determination that three of the four elements required to obtain a preliminary injunction remained clearly tilted in plaintiffs' favor. *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561–62 (11th Cir.1989), *aff'd*, —— U.S. ——, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (setting forth requirements for preliminary injunctive relief). First, the court determined that plaintiffs had clearly demonstrated a substantial threat of suffering irreparable injury in the absence of an injunction. *See* Memorandum Opinion at 55–60. Worsening political conditions in Haiti since issuance of the Memorandum Opinion underscore this very serious threat. *See, e.g.*, Affidavit of William G. O'Neill at para. 10 (describing persecution of Haitians upon their return to Haiti by defendants); *id.* at para. 6 (describing persecution of Haitians involved in grass-roots, pro-democracy organizations). Second, the court determined that plaintiffs had demonstrated that this threatened injury outweighed the potential harm an injunction would have caused the defendants. *See* Memorandum Opinion at 60–61. Third, the court determined that the injunction would not disserve the public interest. *See id.* at 61–62.

█ This court's fourth determination regarding the propriety of issuing a preliminary injunction was that plaintiffs had

---

**2.** This TRO did not preclude the return of class members who, as determined by representatives of the United Nations High Commissioner on the Status of Refugees, wished to be returned to Haiti.

**3.** In light of the Court of Appeals' December 19, 1991 per curiam majority opinion, this court is constrained to decline plaintiffs' invitation again to consider granting injunctive relief on the basis of the APA.

demonstrated a substantial likelihood of prevailing on their claims under the APA. As suggested in the footnote on page one, the court's December 17 order concluded that the challenged actions are not committed to agency discretion by law within the meaning of 5 U.S.C. § 701(a). *See State of Florida, Dep't of Business Regulation v. United States Dep't of Interior*, 768 F.2d 1248, 1255 (11th Cir.1985) (holding that "[t]his exception to judicial review is a narrow one that must be clearly demonstrated before it can be invoked"). To be sure, this court's December 3 order determined that plaintiffs had not shown a likelihood of prevailing under the APA; this determination was made in light of Congress' broad grant of discretion to the President in establishing the interdiction program. *See* Memorandum Opinion at 54–55. However, on December 17, having the benefit of the more thorough briefing before the Court of Appeals, we recognized the significant distinction between the President's discretion in establishing the program and subordinates' discretion or lack thereof in following program procedures and guidelines. Whereas a court reviewing the President's actions in establishing the interdiction program would have no meaningful standards against which to measure the actions, a court reviewing the actions of subordinates in carrying out the program would have such standards. *Compare* 8 U.S.C. § 1182(f) (statutorily authorizing Executive Order 12324) *with* INS Operating Procedures. Accordingly, the court determined that the challenged actions do not fall within the "committed to agency discretion" exception to APA review.

◄ ■ A final basis of the court's December 17 preliminary injunction meriting explanation was the further determination that plaintiffs had shown a substantial likelihood that the challenged actions in fact violated the APA. As that statute provides, a court *may* review "final agency action for which there is no other adequate remedy in a court," 5 U.S.C.A. § 704, and

"*shall* ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or found to be] ... without observance of procedure required by law," *id.* § 706 (emphasis added). A review of the previously developed factual record clearly reveals a substantial likelihood that the actions of defendants' subordinates, in carrying out the interdiction program, are arbitrary or without observance of procedure required by law. *See* Memorandum Opinion at 55–60 (describing serious deficiencies of interview process as described by plaintiffs).

### III. FIRST AMENDMENT RIGHT TO ACCESS

Without disturbing this court's conclusion that HRC had established a likelihood of prevailing on its first amendment claim,[4] the Eleventh Circuit held that the first amendment claim could not support the injunctive relief granted in this court's prior order. The majority found that the relief granted—a ban on repatriation—did not address the right of access asserted by HRC. December 17, 1991 Per Curiam Opinion at 4. HRC now reasserts its first amendment right of access to the interdicted Haitians and requests a remedy which does address that right.

For the reasons set forth in this court's Memorandum Opinion, we reaffirm our conclusion that HRC has established a substantial likelihood of success on the merits of its first amendment claim.[5] *See Jean v. Nelson*, 727 F.2d 957, 983 (11th Cir.1984); *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Furthermore, HRC may invoke its first amendment rights in an offshore area over which the United States has jurisdiction and control. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990); *Reid v. Cov-*

---

**4.** Additionally, in remanding the case the Eleventh Circuit instructed this court to dismiss, on the merits, only those claims predicated on Article 33.

**5.** As noted above, we reaffirm our findings and conclusions as to the remaining three prerequisites for a preliminary injunction.

*ert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957).

In this court's December 3, 1991 Memorandum Opinion, we expressed concern regarding HRC's right of access to a military installation. Nevertheless, given HRC's lack of alternative means of exercising its first amendment right and the fact that HRC's interest would further the government's interest in assuring that no political refugee was wrongfully repatriated, we were not convinced that the challenged restriction on access was reasonable. Additional facts presented at today's hearing reinforce this position. First, the portions of the military installation to which HRC seeks access are not used for military purposes; they serve the non-military function of detaining refugees. Second, the government has opened the camps to members of the press and to representatives of the United Nations High Commission on Refugees. Finally, the additional evidence regarding the conditions in Haiti, *see* section II, magnifies the importance of HRC's right of access because of the increased likelihood that interdictees returned to Haiti will face persecution or death. The severity of these consequences weighs heavily in favor of permitting HRC to exercise its first amendment right to counsel its members before they are repatriated.

■ The Eleventh Circuit majority held that the prior relief granted—a complete ban on repatriation—was overly broad with respect to the first amendment claim:

> The injunctive relief granted by the district court does not require the defendants to allow HRC access to the Haitian interdictees, it enjoins the defendants from repatriating them. Because the relief granted does not address the right of access asserted by HRC, the First Amendment claim cannot support the injunction.

December 17, 1991 Per Curiam Opinion at 4. Consistent with the majority's holding, we now attempt to fashion a remedy which directly addresses the first amendment right of access. Rather than a complete ban on repatriation, we find that a reasonable delay in returning the interdicted Hai-

tians is necessary to give HRC an opportunity to exercise its first amendment right of access to the class members. Accordingly, defendants will be ordered to grant plaintiffs' counsel meaningful access, before repatriation, to the interdicted class members, subject to reasonable, content-neutral, time, place and manner restrictions.

## IV. INJUNCTIVE RELIEF ON OTHER GROUNDS

Finally, the court considers plaintiffs' application for injunctive relief based on other enforceable rights, i.e., Executive Order 12324, the Immigration and Nationality Act, and the Refugee Act of 1980. On December 3, 1991, without determining the merits, this court denied relief on those bases. Since that time, the court has had the opportunity to review the additional, more thorough briefing filed with this court and the Eleventh Circuit Court of Appeals. As a result of this review, the court determines that the questions of the judicial enforceability of these rights are very close ones. However, for the reasons set forth in the December 3, 1991 order, the court determines that plaintiffs have not shown a substantial likelihood of prevailing on the merits of these claims. Accordingly, they provide no basis for an injunction against repatriation.

## V. CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED as follows:

First, plaintiffs' request that the court enter findings of fact and conclusions of law in support of its December 17, 1991 preliminary injunction based on the APA is GRANTED as set forth in section II;

Second, for the reasons described in section III, plaintiffs' request for an injunction ordering defendants' to grant plaintiffs' lawyers access to the interdicted class members is GRANTED as follows: defendants shall grant plaintiffs' counsel meaningful access to its interdicted class members, before repatriation, subject to reason-

able, content-neutral, time, place and manner restrictions;

Third, plaintiffs' request for injunctive relief based on grounds previously asserted, i.e., Executive Order 12324, the Immigration Act, and the Refugee Act of 1980, is DENIED for the reasons set forth in section IV;

Finally, no motions for stay of this order pending appeal will be entertained in the district court from any party.

DONE AND ORDERED.